## ELLIS JONES v. WEST. PENNA. N. GAS CO.

**APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY.**

Argued October 20, 1891—Decided January 4, 1892.

(a) A lessee in an oil and gas lease covenanted to complete a well by a date certain, or in default thereof pay for further delay a certain rental yearly from the time specified: "And a failure to complete such well, or to pay said rental, . . . . shall render this lease null and void, and can only be renewed by mutual consent: "

1. The legal effect of the covenant is that the forfeiture is for the benefit of the lessor and is at his option; and such effect can be changed only by an express stipulation that the lease shall be voidable at the option of either party, or of the lessee.

2. If a lease is to become "null and void," it is not made any more so by provisions that it "shall be of no effect between the parties," or "can only be renewed by mutual consent," or other merely cumulative phrases of the same meaning.*

3. In an action to recover on the lessee's default, an offer of the defendant to show "the uniform construction placed upon such leases by both lessors and lessees," is inadmissible. It is no more than an offer to reform an instrument on evidence of popular error as to the law. †

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

---

* See Ogden v. Hatry, 145 Pa. 640.
† See Ray v. N. Gas Co., 138 Pa. 576, 579, 590.

No. 109 October Term 1891, Sup. Ct.; court below, No. 186 November Term 1890, C. P.

Returnable to the first Monday of October, 1890, Ellis Jones brought assumpsit against the Western Pennsylvania Natural Gas Co. Issue.

At the trial, on March 12, 1891, the plaintiff gave in evidence a lease made by the plaintiff to the defendant company on April 29, 1889, demising the plaintiff's farm of two hundred and twenty acres in Donegal township, for oil and gas production. The lease contained the following covenant:

"It is further agreed that the party of the second part shall complete a well on the above-described premises, by the fifth of August, 1889, from the date above, or in default thereof pay to the party of the first part, for further delay, a yearly rental of three hundred dollars on the said premises, from the time above specified for completing a well until such well shall be completed. . . . . And a failure to complete such well, or to pay said rental, or within ten days thereof, shall render this lease null and void, and can only be renewed by mutual consent."

It was admitted that the defendant company had drilled no well on the demised land, and had paid to plaintiff no rental. The plaintiff then rested.

Under objection and exception to the plaintiff, the defendant adduced evidence tending to show that the lease in question was one of a number of leases intended to form a block upon which a test well was to be drilled; that this was communicated to the plaintiff, and it was agreed that the test well should be commenced within sixty days and prosecuted with diligence to completion, and the understanding was that if the test well should be dry the leases should be null and void; that the test well was drilled on the farm of Abe Hair, about one mile from the plaintiff's farm, and though the well was put through all the sands it was unproductive. The witness who had obtained the lease, when asked to state " what was said, if this territory should prove dry territory," testified: " I told him the company would have the right, in case the test well was dry, to surrender the lease and be relieved from any further claim in regard to it; they would then have gone on and honestly developed the

Statement of Facts.

territory; that was the understanding with which the lease was signed, and positively explained to Mr. Jones before the lease was signed. Q. You say that was done before he signed the lease? Yes sir."

George W. Reed, an oil operator in Washington county, called by the defendant:

Mr. Todd: It is offered to prove by this witness, that in the oil and gas business, leases similar to the lease in suit are universally taken, providing "that a failure to complete such well or pay said rental shall render the lease null and void," and that the uniform construction placed upon such leases by both lessors and lessees, at the time that this lease was taken and prior thereto, was that the contract permitted the lessor to forfeit the lease on a failure to drill such well or pay such rental, and that it also permitted the lessee to forfeit said lease by a failure on his part either to drill or to pay the rental when due: to be followed by the evidence of numerous other witnesses, both operators and farmers, to the same effect, covering a period of time co-extensive with the oil business. This for the purpose of enabling the court and jury to construe the clause in the lease in evidence, which reads, "A failure to complete such well, or to pay said rental, or within ten days thereof, shall render this lease null and void, and can only be renewed by mutual consent."

Objected to as incompetent and irrelevant, for the reason, 1. That it is not proposed to show that said custom was so continued, notorious, uniform, general and certain as to be necessarily known to everybody making such contracts. 2. For the reason that it is an effort to prove a custom contrary to the plain meaning of the contract. 3. For the reason that the custom offered to be proved, is against law and equity, and conflicting with the construction placed upon similar agreements by the courts of this commonwealth. 4. That the covenant recited, being one for the exclusive benefit of the lessor, a waiver by every other or any other lessor in the county, will not affect the plaintiff in this suit. 5. There is no ambiguity in this contract, and the clause has already been construed by the highest court in the state.

By the court: Objection sustained, offer overruled; exception.[4]

It was understood and agreed, that the same offer should be considered as having been made in case of other witnesses, with the same objections, and same ruling.

In rebuttal, the plaintiff denied that he was informed when the lease was executed that a test well was to be drilled on the Hair farm, and testified that he did not agree that if the test well proved to be unproductive, he would surrender the lease and demand no rentals.

At the close of the testimony, the court, McILVAINE, P. J., charged the jury in part as follows : :

[There is a clause in this lease which you have heard discussed. by the attorneys, which it is the duty of the court to interpret, and not that of the jury. It is this: "A failure to complete such well, or to pay said rental, or within ten days thereof, shall render this lease null and void, and can only be renewed by mutual consent." The object of a forfeiture clause in an oil lease like this, as construed by the Supreme Court, is merely to give the lessor an additional remedy by which he can enforce his rights; he can either collect the payment of this rental by suit, or take possession of his land under the forfeiture clause. Such an interpretation having been put upon clauses very similar to this, by the Supreme Court, it is our duty to adopt their construction ; and we therefore instruct you that this clause does not relieve the defendant company from paying the rental which, under another clause of the lease, was due on the fifth day of August, 1890 ; and if you believe that there was no well drilled on this farm on August 5, 1890, and that the three hundred dollars rent then due has not been paid, the plaintiff would be entitled to recover three hundred dollars, with interest from the fifth day of August, 1890, the date when this year's rental should have been paid. This is the plaintiff's case.] [3]

[The defendant company does not controvert the fact that it executed this lease and became bound by its provisions ; and it does not controvert the fact that it has not drilled a well on this farm, nor that it has not paid the rental; but it sets up this defence : That when this lease was executed, the territory in the neighborhood of Mr. Jones's farm, embraced in the lease, was what is known in the oil business as a wild-cat territory ;

Charge of Court below.

and that its object was to get a block of land, a number of farms, and put down a test well to see whether or not there was any oil or gas in that neighborhood; and that this lease was executed with Mr. Jones in view of this prospective development for oil or gas, so that the company would have a written, binding contract with him if that territory proved to be oil or gas territory; but that there was a verbal contract entered into at the same time, between Mr. Jones and the agent of the company, and before this lease was executed, that if the well on the Hair Farm, which was to be the pioneer well and a test of the block of land, proved a failure, and developed the fact that the territory in that neighborhood, embraced in this block, was barren territory, and that it would be useless for the company to drill more wells and spend money for nothing, then in that event the company was to have the right to surrender this lease to him, and he was to accept it as a surrendered and canceled lease, and from that date forward none of the conditions or covenants of the lease were to be binding upon the company. In pursuance of that agreement, the defendant company claims that it sent their agent, Mr. McGrew, to Mr. Jones, on the twentieth of November, 1889, and tendered him back this lease, the Hair well having proved a failure, and that Mr. Jones refused to receive it.

Now, a very important question for you to determine is, whether or not there was a parol agreement that in the event that this territory proved barren, the company should have the right to surrender this lease, and thereby terminate its liability. If you believe that such a contract was entered into by Mr. Jones, and that the company, in pursuance of that parol agreement, took this lease and tendered it to Mr. Jones, that would stop the rental and would terminate the contract relation between these parties from and after that date; but the company would be bound, under its covenant, for the rental from the fifth of August up until the time it offered to surrender the lease, the twentieth day of November, 1889, three months and fifteen days. It would, I am of the opinion, under the terms of the lease, have to pay the rental as long as it held it, or up until the time it offered to surrender it; that is, from the date it was in default up to the day it tendered the lease to the plaintiff, which would be three months and fifteen days.

Charge of Court below.

Now, gentlemen, if you find that the defendant has failed by clear and satisfactory proof to show such a parol contract as would allow it to surrender this lease to Mr. Jones and require him to receive it at the time it did offer to surrender it, then Mr. Jones would be entitled to recover, upon the face of the lease, the three hundred dollars, with interest from the fifth day of August until the date when it became due. On the other hand, if you find that the defendant has shown by clear and satisfactory proof that the plaintiff made a parol agreement binding himself to accept the surrender of this lease after the Hair well came in dry, and that it was tendered to him and he refused it, then the plaintiff would only be entitled to recover for the three months and fifteen days, or $87.50, with interest.] [5]

The plaintiff asks us to say to you:

1. The provision in the lease, that a failure to complete a well or to pay the rental within ten days after due, as required by the terms and conditions of said lease, renders the lease null and void, being intended for the protection of the lessor, he, the lessor, has the option to declare the forfeiture or to affirm the continuance of the contract; and if he, the lessor, does not choose to avail himself of the forfeiture, it cannot be set up by the lessee, the defendant company, as a defence to an action for the rental due upon said lease.

Answer: Affirmed.[1]

The defendant asks us to charge you as follows:

1. That the clause in the lease in controversy which provides that a " failure to complete such well, or pay said rental, or within ten days thereof, shall render this lease null and void, and can only be renewed by mutual consent," the evidence showing that no well was drilled upon the plaintiff's property, and no rental paid, worked a forfeiture of the lease by the terms of it, and the verdict must be for the defendant.

Answer: Refused.[2]

[We think, gentlemen, on the face of the lease it is binding on the lessee; and the defendant in this action can only relieve itself from the payment of the rental by showing this parol agreement, which it has set up, by clear and satisfactory proof.] [5]

—The jury returned a verdict in favor of the plaintiff for

$311.50.  Judgment having been entered, the defendant took this appeal, assigning for error:

1. The answer to the plaintiff's point.[1]
2. The answer to the defendant's point.[2]
4. The refusal of the defendant's offer.[4]
3, 5. The portions of the charge embraced in [ ] [3] [5]

*Mr. A. M. Todd*, for the appellant:

Distinguishing prior cases construing leases with covenants of the character of that in the present case, in that no facts and circumstances surrounding their making were submitted, merely the covenants alone, and in that the language in the forfeiture clause in the lease in controversy was radically different, counsel cited: Berridge v. Glassey, 112 Pa. 442 ; Miner's App., 61 Pa. 283 ; Lehigh C. & N. Co. v. Harlan, 27 Pa. 429, and urged further :

1. It was for the purpose of enabling the court to construe properly the ambiguous phrase, " can only be renewed by mutual consent," that the defendant's offer was made to show that the construction uniformly placed upon similar instruments, by lessors and lessees, had been that the forfeiture was at the option of either party to such leases.  It was not intended to prove what might be technically called a custom, or usage of trade.  If, however, it be a fact that a uniform construction has been established for language such as this, which precludes the idea that either of the contracting parties could have intended to deprive himself of the right of forfeiture by using it, then this fact should have great weight in arriving at the intent of the parties when they made use of it.

2. All the evidence offered by the defendant was for the purpose of ascertaining the meaning which the contracting parties intended to give to the language made use of by them in the lease.  The court below, however, did not regard this aspect of the case, but left it as a question of fact for the determination of the jury, whether the testimony showed that the plaintiff and the defendant's agent entered into a contemporaneous parol agreement.  The making of such parol agreement by the parties would imply that the subject matter of that agreement was not embraced in the writing, and would recognize the fact that the forfeiture clause, contained in the writing, did not per-

Opinion of the Court.

mit the defendant to surrender the lease by non payment of rental. It was the exact opposite interpretation from that for which the defendant contended.

*Mr. J. P. Miller* (with him *Mr. J. M. Braden*), for the appellee.

Counsel cited: Galey v. Kellerman, 123 Pa. 491; Wills v. N. Gas Co., 130 Pa. 222; Westmoreland N. Gas Co. v. DeWitt, 130 Pa. 235; Ray v. N. Gas Co., 138 Pa. 576.

OPINION, MR. JUSTICE MITCHELL:

The meaning of the covenant in this lease has been definitely settled by repeated decisions of this court. The language does not differ essentially from that construed in Galey v. Kellerman, 123 Pa. 491; Wills v. N. Gas Co., 130 Pa. 222; Westmoreland N. Gas Co. v. DeWitt, 130 Pa. 235, and Ray v. Gas Co., 138 Pa. 576. The substance of the language of the covenants in all of them was that upon certain contingencies the lease should be "null and void," and the slight variation of the words following makes no difference in their real meaning. If a lease is "null and void," it is not made any more so by provisions that it "shall be of no effect between the parties," or "can only be renewed by mutual consent," or other merely cumulative phrases of the same meaning. The legal effect of the covenant is that the forfeiture is for the benefit of the lessor, and at his option, and such effect can only be changed by an express stipulation that the lease shall be voidable at the option of either party, or of the lessee.

The learned judge correctly instructed the jury as to the meaning of the covenant, but also instructed them that it was competent for the parties to make a different agreement at the time, even if only in parol, and left the fact of such agreement to the jury, who have found against the appellant. Such submission did appellant no harm, even if such point was not intended to be raised by the offer of evidence made. If the writing was to stand alone, the verdict must, as matter of law, be directed against appellant, and he was not injured by allowing the jury a chance to find in his favor.

It is complained, however, that the learned judge misapprehended the offer, which was to show "the uniform construction

placed upon such leases by both lessors and lessees." This, as now explained, was entirely inadmissible. It is no more than an offer to show a popular misunderstanding of the law. The legal meaning of the language used was plain, and had in fact been declared by this court in Galey v. Kellerman, supra, before the date of the lease in suit, and it could not be varied by showing a popular error in regard to it. A deed of land to A, to hold for his own use, or as his own property, conveys a life-estate only; and his heir could not support an ejectment on it by showing that people of that neighborhood at that time generally supposed such a deed passed a fee, though no doubt hundreds of witnesses could honestly testify to such belief. If the parties so far participated in the error as to use such language when they meant something different, the instrument may be reformed in accordance with their intent, but this cannot be done by a jury on evidence of a popular error in regard to the law.

Judgment affirmed.