## CHARLESTON

Lawson *et ux* *v.* Williamson Coal & Coke Company.

Submitted September 16, 1906.     Decided April 17, 1907.

1. Mines and Minerals—*Leases—Construction—Royalties.*

   Stipulations in a lease of land for coal mining and coke manufacturing purposes, binding the lessee to pay to the lessors, from and after a date therein specified, the sum of $5,000.00 per annum, during the life of the lease, as a minimum royalty for the demised property, whether the quantity of coal mined and coke manufactured shall produce that amount of royalty or not, and providing that all rents and royalties in the lease agreed to be paid shall be deemed and treated as rents reserved upon contract by the lessors, constitute, in the absence of any clause in the lease positively expressing contrary intent, an absolute undertaking to pay said sum. (p. 671.)

2. Same.

   A clause in such a lease, providing that, on failure of the lessee to comply with the provisions thereof as to payment of the royalties, or as to development of the property, it shall "become forfeited and utterly void," does not sufficiently manifest intent that it shall be optional with the lessee to develop the propeaty and pay the rent, or not, as he may see fit, to overcome the expressed intention that the minimum royalty shall be paid, whether any coal is mined or coke manufactured or not. (p. 672,)

3. Same.

   As such clause is one of forfeiture and intended for the benefit of the lessor, the lessee cannot terminate, render inoperative or annul the contract by mere failure to enter upon the land and occupy or develop it as lessee. (p. 673.)

4. Same—*Remedies.*

   Payment of royalties accruing under such lease may be en-

forced by any remedy by which rent is recoverable, and the trial of any issue arising in an action or proceeding brought for the recovery thereof as rent is governed by the same rules that would apply if it were rent in the strict legal sense of the term. (p. 673.)

5. SAME.

Royalties accruing under such a lease are recoverable in *assumpsit* under an *indebitatus* count for use and occupation, or under a special count on the contract. (p. 673.)

6. SAME—*Evidence.*

As to the lessor, such a lease is an executed contract, and is admissible as evidence under a common count to prove the amount he is entitled to recover. (p. 674.)

7. SAME—*Right of Action.*

To enable a lessor to recover rent due on the contract of lease, no entry upon, or occupation of, the leased premises need be shown, except in the case of a common law tenancy at will. Since the obligation to pay rent arises out of the contract, not the entry, the action may be maintained though no entry was ever made. (p. 675.)

8. SAME—*Evidence Admissible Under Pleading.*

Evidence to sustain a demand for rent is not admissible under a declaration containing no counts other than the *indebitatus* counts for goods, &c., sold and delivered, work and labor, money lent, advanced, &c., money had and received and an account stated, there being no evidence tending to prove a settlement so as to bring the case within the last mentioned count. (p. 679.)

9. PLEADING—*Curing Errors—Amendment.*

When such evidence has been admitted under such a declaration the errors committed and the variance occasioned by its admission, may be cured by amending the declaration at any time before verdict, if the defendant waives the right to a continuance which the act of amendment gives him. (p. 680.)

10. SAME—*Amendment—Form.*

A reproduction of the original declaration with a new count added, entitled "Amended Declaration," and so designated and treated in the order of the court filing it, is deemed an amended declaration, not a new and independent one. (p. 681.)

11. ARBITRATION AND AWARD—*Submission—Ousting Jurisdiction of Court.*

To prevent resort to an action at law for breach of a contract, in the first instance, on the ground that the defendant is entitled to a determination of the matter in controversy by an arbitration, it must appear, not only that the contract provides for an arbitration in such case, but also that it has been made a condition precedent to such right of action. (p. 682.)

Error to Circuit Court, Mingo County.

Action by George W. Lawson and wife against the Williamson Coal & Coke Company. From a judgment in favor of plaintiffs, defendant brings error.

*Affirmed.*

SHEPPARD, GOODYKOONTZ & SCHERR, for plaintiff in error.

STOKES & BRONSON and D. J. F. STROTHER, for defendants in error.

POFFENBARGER, JUDGE:

A judgment of the circuit court of Mingo county in favor of Geo. W. Lawson and wife against the Williamson Coal & Coke Company for $5,427.48, brought into this Court by a writ of error, involves questions concerning the right of a lessor in a coal lease to recover from the lessee, who has never taken actual possession of the leased premises, the minimum royalty provided for in the written lease and taxes on the land which the lessee bound himself to pay.

In the petition for the writ, there are twenty-two assignments of error, all of which are insisted upon in the argument; but separate discussion of them is unnecessary, since they grow out of, and are reducable to, legal principles fewer in number. The first fifteen are predicated upon the overruling of objections to oral testimony of the plaintiff, introduced for the purpose of proving the signatures to the contract, non-payment of the royalty and taxes, correctness of the account filed, payment of taxes by the plaintiff and similar matters. All these objections are based upon the theories of no right of recovery, because the defendant had made no entry upon the land under the contract, and lack of count in the declaration under which the evidence is admissible. The 16th and 17th are founded upon the action of the court in refusing to strike out the evidence; the 18th upon the allowance of an amendment to the declaration, over the objection of the defendant, after all the evidence had been introduced and the case submitted to the court; the 19th upon the rendition of judgment; the 20th upon the overruling of the motion to set aside the finding and judgment; the 21st upon the overruling of a motion in arrest of judg-

ment, and the 22nd upon the overruling of a motion for judgment for defendant.

By the first and second clauses of the agreement the land, about two thousand acres, is demised and leased to the defendant for coal mining and coal coking purposes only, for a period of thirty years, with the right of renewal for an additional like period and certain stipulations made concerning reserved rights to prospect for and produce oil and gas from the premises, and respecting timber on the land. By the third clause, the lessee covenants, agrees and promises to pay to the lessor, during the continuance of the lease, as royalty or rent for the premises, ten cents for each ton of coal mined and carried away from the premises or used or sold thereon, and fifteen cents for each ton of coke made thereon. The 4th, 5th, 6th, 7th and 8th clauses relate to methods of accounting, working the mines and other matters, not involved in this action.

The 9th, 10th, 12th, 14th and 19th clauses, all that have any really important bearing upon this inquiry, read as follows:

" Ninth:   It is further covenanted and agreed that the lessee shall, within a reasonable time hereafter, proceed with all reasonable dispatch to establish his coal mining plant for the development of said property.   And the said lessee doth agree and bind itself to pay to the lessors, from and after the first day of January, Nineteen Hundred and Four (1904), the sum of Five Thousand Dollars ($5.000.00) per annum as a minimum royalty or rental for the property herein demised, whether the quantity of coal mined and coke manufactured shall produce that amount of royalty or not. But in case the *lesee* shall fail to mine enough coal to produce the minimum royalty for any one year, it shall have the privilege of mining the next two succeeding years, free from royalty, a sufficient amount of coal above the amount necessary to produce the minimum royalty for that year to reimburse itself for the deficiency for the two preceding years; but no payment in excess of the minimum for any one year shall be credited against the deficiency of the subsequent year.

"Tenth:   The lessee agrees to pay all taxes that may be assessed against the demised premises and the improvements

thereon, and upon the coal mined or coke manufactured, during the continuance of this lease, and also all other assessments by court or operation of law thereon, when and as the same shall become due and payable.

"Twelfth: It is further agreed that all rents and royalties herein agreed to be paid shall be deemed and treated as rents reserved upon contract by the lessors, who reserve to themselves all rights of landlords under the laws of West Virginia for the collection of the same, and if any of the rents and royalties shall remain unpaid for thirty (30) days after the same shall become due and payable as hereinbefore provided, the lessors shall have the right to enforce the payment of the same by the remedies given by the law to landlords against delinquent tenants. It is further agreed that not only the personal property shall be subject to distress as contemplated and directed by law, but also that the lessors may enter upon the leasehold and sell the same or any part thereof, together with the improvements thereon, for the rents and royalties then due upon the default in the payment thereon as aforesaid. At any sale of this lease or leasehold, or any part thereof, under this clause, the lessors shall have the right to become the purchasers thereof free from any and all claims of the lessee.

"Fourteenth: In case the lessee shall fail to comply with the provisions of this lease as to the payment of royalties, or as to the development of said property, then this lease shall become forfeited and utterly void.

"Nineteenth: In the event that any controversy or difference or matter in dispute shall arise between the parties hereto, growing out of this contract and agreement of lease, the same shall be submitted by the parties hereto to arbitrators in the manner provided for in Clause Sixth hereunder, and the said Clause Sixth shall govern and control the appointment of said arbitrators and their action in the premises in every particular."

The original declaration consists of common *indebitatus* counts for goods, wares and merchandise sold and delivered; work and labor performed; money lent, advanced, paid out and expended; money had and received, and upon an account stated; and a special count upon the contract. A demurrer to the declaration and each count thereof was overruled, as to

all except the special count, and, as to it, sustained.. Issue was joined on the plea of *non-assumpsit* and the case submitted to the court in lieu of a jury, by an order entered on the 6th day of December, 1905.   .The evidence consisted of the written contract of lease and the oral testimony of the plaintiff already mentioned.   All this evidence having been admitted over objections of the defendant, it excepted to the rulings, as has been stated.   The final order was entered on the 15th day of December, 1905, which shows that the plaintiffs were allowed to file an amended declaration over the objection of the defendant, and that the latter waived its right to a continuance on the ground of the allowance of said amendment, and declined to make further appearance or plead to the declaration as amended, as well as to offer any further proof.   The amended declaration is like the original in all respects except the special count, which is based upon the contract.   In neither is there any common count for use and occupation of the land, nor does the bill of particulars filed with the original declaration contain any item for use and occupation.   It consists of three items, namely, $5,000.00 royalty, $50.00 interest thereon and $139.98 for taxes paid, total $5,189.98.

Much depends upon the construction of the contract.   If it had been stipulated that the royalty should be paid out of the proceeds of the coal to be mined, or upon any other condition, it would have been necessary to aver and prove that the coal had been produced or that such other condition had been performed.   Again, if the terms of the contract had been such as to leave it within the power of the lessee to abandon the lease at any time, the relative status of the parties would have been materially different from what it is. There is not only an absolute undertaking to pay annually the sum of $5,000.00 and in addition thereto the taxes on the land, but a stipulation that all the rents and royalties agreed to be paid shall be deemed and treated as rents reserved upon contract by the lessors, wherefore it is impossible to treat the parties otherwise than as lessor and lessee without violating the express terms of the agreement, or determining upon consideration of the whole instrument that the terms of this stipulation were intended to mean something other and less than they, according to their legal, as well as ordinary, meaning, signify.

The only clause in the agreement which affords a shadow of ground for the contention that the tenancy is one at will, or is terminable at the pleasure of the lessee, is the fourteenth, providing as follows: "In case the lessee shall fail to comply with the provisions of this lease as to the payment of royalties, or as to the development of said property, then this lease shall become forfeited and utterly void." That failure to enter upon the land, to develop it, or to pay rent, or comply with any other covenant or condition of the agreement, does not of itself release the lessee, by virtue of this clause, is abundantly settled by the decision of this Court in *Roberts* v. *Bettman*, 45 W. Va. 143. The forfeiture clause relied upon in the lease in that case was much stronger than this. It said failure to complete a well or pay the rental, when due or within ten days thereafter, should render the lease null and void, and that it could only be renewed by mutual consent, and that no right of action, should after such failure, accrue to either party on account of a breach of any covenant therein contained. And it was further agreed that the lessee should have the right at any time to surrender the lease to the lessor. Notwithstanding all this, the. Court held that the forfeiture clause was for the benefit of the lessor, and, as he had not in any way declared a forfeiture, but on the contrary, had treated the lease, after the breach of its covenants, as a valid and subsisting contract and insisted upon performance, and was not himself in default in any respect, a judgment for the rent due and in arrears was affirmed. The conclusion and judgment of this Court was based upon the following decisions of the Supreme Court of Pennsylvania: *Galey* v. *Kellarman*, 123 Pa. St. 491; *Wills* v. *Gas Co.*, 130 Pa. St. 222; *Leatherman* v. *Olliver*, 151 Pa. St. 646; *Phillips* v. *Vandergrift*, 146 Pa. St. 357; *McMillan* v. *Philadelphia Co.*, 159 Pa. St. 142; *Cochran* v. *Pew*, 159 Pa. 184; *Conger* v. *Transportation Co.*, 165 Pa. St. 561. This doctrine is re-affirmed in *Henne* v. *South Penn Oil Co.*, 52 W. Va. 192. Though these decisions relate to leases for oil and gas purposes and not to leases for coal mining purposes, it is not perceived how they can be regarded otherwise than applicable to the question here presented which is, whether failure to comply with conditions on the part of the lessee *ipso facto* terminated the lease. If

it could be said of any coal lease, the terms of which are indefinite, that such a clause of forfeiture discloses intent to leave it optional with the lessee to mine or not, the parties to this agreement have, by their express stipulations and covenants, precluded any such interpretation. It would not be optional by express stipulation. The forfeiture clause would amount to no more than the basis of an inference as to intention consistent with all other parts of the instrument. Here such inference could not be accordant with positive expressions of intention. There is an absolute undertaking to pay $5,000.00 per year and a conditional obligation to pay more, the amount whereof is to be determined by specific rates upon the amount of coal produced, if the production shall exceed the amount necessary to make the royalties $5,000.00 per year at the specified rates per ton. And it has been expressly further agreed that the amount so to be determined shall be deemed and treated as rents reserved upon contract. This effectually excludes the possibility of any intention that the obligation to pay the royalties should be in any sense conditional.

If the stipulated sum of $5,000.00 cannot, under the covenants and agreements of the parties aforesaid, be regarded as rent in the strict legal sense of the terms, then, tested by the decisions of reputable courts, it is to be regarded as liquidated damages. *Powell* v. *Burroughs*, 54 Pa. 329; *Coal Co.* v. *Peers*, 150 Ill. 344. In the last named decision the court held as follows: "A provision in a lease for mining coal, that the lessee or his assigns shall pay a royalty of twelve hundred dollars a year, payable monthly, whether any coal is mined or not, is a reasonable one, and may be enforced as liquidated damages;" and the court, in reaching this conclusion, applied a rule of construction, which it states in the following terms: "If, from the nature of the contract, the damages cannot be calculated with any degree of certainty, or if there are peculiar circumstances contemplated by the contract, the stipulated sum will be held to be liquidated damages." If, as stated, the court could say the parties did not intend all that is imported by the terms of the stipulation that the royalty shall be deemed and treated as rent, the right to recover the whole amount of the royalty would be sustained by the principle enunciated in the cases just cited, if

they are sound. Whether they are or not, we deem it unnecessary to inquire because of the positive and express provisions of the contract disclosing intent that the royalty shall be paid at all events.

Although the land leased was to be subjected to a use which permitted and required the severance and carrying away of certain portions thereof, not merely the use of the land in its natural state, and although it is apparent that the lessee expected and intended to obtain the means of payment of the royalties from the sale of portions of the realty to be so severed and carried away, and that, in case of its failure to sever them and convert them to its own use, they would remain part of the land and be the property of the lessor, it was undoubtedly competent for the lessee to bind itself absolutely to the payment of the stipulated amount, without reference to the source from which it expected to derive the means of payment, and to agree that the obligation to pay should have all the virtue and characteristics of an agreement to pay rent. To hold otherwise would amount to a denial of the right to contract. Courts have no power to depart from the plain intent and meaning of a contract, in order to relieve against hardships, so long as no rule of public policy is violated and the contract is free from fraud and mistake.

The view that the contract and the oral testimony connected with it are inadmissible for want of evidence of entry upon the leased premises, and that the motion made to exclude the evidence on the same ground should have been sustained, it being contended that, before recovery of rent *eo nomine*, or compensation for use and occupation of land can be had, the relation of landlord and tenant must be shown, is wholly untenable, as will appear by reference to the decision of this Court in *Goshorn* v. *Stewart*, 15 W. Va. 657. In that case, the action was *assumpsit* for use and occupation and the evidence was introduced under a common count. There were four lessees, two of whom had entered upon the land but the others had not, and a judgment against all of them was affirmed. The Court reached the conclusion that proof of actual entry upon the premises by the lessee is not essential to the maintenance of the action upon the authority of *Hall* v. *Transportation Co.*, 34 N. Y. 284. In that case, and a number of others cited to sustain it, there had been an

entry upon the land, but a subsequent abandonment, and the contention was that no recovery could be had for the time during which there was no actual occupation. It is to be observed also that in *Goshorn* v. *Stewart*, cited, there had been an actual entry by two of the four lessees. Nevertheless, it is well settled that an action may be maintained by the lessor, although no entry at all has been made upon the premises. As regards the lessor, the contract is fully executed. He has granted and vested in the lessee a right to the possession of the land and nothing remains to be done to vest in the latter the ownership thereof for a term of years but to enter upon it. That he must do himself, and the obligation to pay rent arises, not from his entry, but from his contract to pay. Taylor, Landlord & Tenant, sections 15, 624. Even though it be stipulated that the lease is to commence *in futuro*, the contract is not an executory one. It vests a present interest in the term and cannot be rescinded by either party alone. *Becar* v. *Flues*, 64 N. Y. 518. To the same effect is *Brick-head* v. *Cummings*, 34 N. J. L. 44, sustaining an action by a landlord for rent reserved on a lease, under which the tenant had refused to enter and had never been in possession of the premises. In *Bellasis* v. *Burbriche*, 1 Lord Raym. 170, it is said: "It does not appear, when the tenant entered, or how long he occupied. *Sed non allocatur.* For in cases of leases for years the rent becomes due from the lease, and not from the entry, and he has no need to aver occupation, because the lessee is liable to pay the rent, whether he occupies or not." But the rule is different when the tenancy is one known to the common law as a tenancy at will. In such cases an entry must be shown. *Hardy* v. *Winter*, 38 Mo. 106; *Bellasis* v. *Burbriche*, 1 Salk. 209.

As declaring principles at variance with this position, *James* v. *Kibler's Admr.*, 94 Va. 165, is relied upon in the argument for the plaintiff in error, but it does not, in our opinion, do so. In that action, the demand was not for rent or royalty for any year of the term, but for damages for a breach of the entire contract, covering a period of ten years, the lessees having failed and refused to enter upon the premises or pay any rent, and their rights having been extinguished by a sale of the term at the instance of the lessors, for a smaller annual rental than the lessees had bound them-

selves to pay. By the sale, their interest in the term was transferred to other persons who bound themselves to pay part of the rent, and the court held that an action against the original lessees for the difference between what they had agreed to pay, as rent for the whole term of ten years, and what the new tenants had agreed to pay for the same term, was maintainable, and that such difference was the measure of damages. The observation of the judge who delivered the opinion, that the relation of landlord and tenant did not exist and never had been effected, was a reply to the contention that the action was maintainable for only one year's rent, and not for damages for breach of the whole contract. It falls far short of a contradiction of the proposition asserted by the authorities to which reference has been made. It is not in any degree inconsistent therewith. The decision merely upholds the well established right of election, as to remedies which a party to a contract not in default, has in case of a breach thereof by the other party.

Passing for the time being, the want of a count in the declaration justifying the admission of the evidence, and assuming the existence of one, it may be remarked that the principles above declared, concerning the right to maintain an action on a contract of lease, as one fully executed, accords fully with a general rule of practice. It is not confined to actions for rent. A special contract which has been fully executed, so that nothing remains to be done other than the payment of the money due on it, is always admissible in evidence under the *indebitatus* counts in an action of *assumpsit* to prove the amount due; but, if it remains in an executory state, it is not admissible, unless there is in the declaration a a special count upon the contract itself, claiming damages for the breach thereof. This rule of practice has been recognized by this Court in *Goshorn* v. *Stewart*, 15 W. Va. 657, in which a written agreement to pay rent was admitted to prove the amount due under a common count for use and occupation of the land. In *Williams* v. *Sherman*, 7 Wend. 109, such an agreement was admitted to prove the amount due for use and occupation of a wharf as a landing place for steamboats, under a common count in the declaration. In *Bank* v. *Patterson's Exrs.*, 7 Cranch 303, a written agreement was held admissible to prove the amount due upon an

executed contract for the erection of buildings under common counts for work and labor, materials, &c, To the same effect see *Dermott* v. *Jones*, 2 Wall. 1. For other illustrations, see *Roberts* v. *Leek*, 108 Ga. 806; *Tumlin* v. *Furnace*, 93 Ga. 594; *Schmidt* v. *Wambacker*, 62 Ga. 321; *Hancock* v. *Ross*, 18 Ga. 364; *Elm City Club* v. *Howell*, 92 Me. 211; *Morse* v. *Sherman*, 106 Mass. 430; *Lowe* v. *Pimental*, 115 Mass. 44. Since the contract itself was admissible, there could have been no error in allowing the plaintiffs to prove the execution of the same, a mere preliminary step, nor in allowing them to prove the non-payment of the sums demanded in the declaration. Nor could the court have erred in overruling a motion to exclude the evidence, the motion to render judgment for the defendant and the motion to set aside the finding of the court, nor in rendering judgment for the plaintiffs, if the declaration was sufficient, or, being defective only, was cured by the amendment.

While it is probably not necessary to so hold, although not improper, since the question fairly arises on the record, we think the evidence was not admissible under any common count of the original declaration, as it stood after the action of the court upon the demurrer thereto. None of the common counts suggested or indicated that any evidence to sustain a claim for rent or use and occupation of land would be introduced. One object of a declaration, as well as of all other pleadings, is to give notice to the opposite party of the nature of the matter relied upon as the ground of recovery or defense, as the case may be, and thereby to indicate in a general way the nature of the evidence which the pleader proposes to introduce. As it sets forth the facts upon which the pleader relies, and its office is to state facts and not law, one of its effects is to apprise the opposite party of the nature of the evidence to be introduced. The common counts set forth in this declaration did not indicate that any evidence of the kind adduced would be offered. On the contrary, they stated facts which indicated reliance upon entirely different kinds of evidence. These views are sustained by the following authorities: 4 Rob. Pr. 522, 537, 540; 1 Chitty Pl., 11th Am. Ed., 295, 598, 299.

But the court did not err in permitting an amendment of the declaration. It was amended after submission of the

case to the court but before any finding was made or judgment rendered. The action of the court is, therefore, clearly sustained by the decision in *Travis* v. *Peabody Ins. Co.*, 28 W. Va. 583, holding as follows: "The plaintiff during the trial of the cause, and before verdict found, may at the discretion of the court be permitted to amend his declaration, in order that a material variance between its allegations and the proofs may be avoided, upon the terms, if the defendant so request, that the jury shall be discharged and the cause continued with leave to the defendant to amend his pleas, or plead anew to the declaration so amended. The circuit courts of this state, in the exercise of their general common law jurisdiction, in the absence of any statute prohibiting them from doing so, and independently of any statute authorizing them to do so, may in their discretion permit the pleadings to be amended at any time before verdict found whenever justice will be promoted thereby, and the same can be done without injury to the opposite party, but in every such case, if the opposite party requests it, the jury should be discharged, and the cause continued with leave to the opposite party to amend his pleadings or to plead anew to the pleadings, so amended." These principles were declared in that case to be founded upon the practice in this state and in Virginia as well as upon section 8 of chapter 131 of the Code, and that conclusion seems to be well sustained by the decisions. *Tabb* v. *Gregory*, 4 Call 225; *Anderson* v. *Dudley*, 5 Call 529; *Doubleday* v. ———, 2 Chitty R. 27, 18 E. C. L. 237; *Storer* v. *Gordon*, 2 Chitty R. 27, 18 E. C. L. 237. The declaration as amended states a cause of action on the written contract—an obligation to pay money, due upon a contract fully executed on the part of the promisees.

It is objected that, instead of amending the original declaration, the plaintiffs filed an entirely new one. As it is entitled "Amended Declaration" and so described and treated by the court in its order, and regard must be had to its substance rather than its mere form, we conclude that it is nothing more than an amended declaration.

The only remaining contention is that no right of action could arise under this contract until after an award of arbitrators had been made on a submission to them, which is not averred. This is founded upon clauses 6 and 19 of the agree-

ment. They require submission, but arbitration is not by them made a condition precedent to the right to sue on the contract. Without such a stipulation the agreement to submit to arbitration does not preclude an action. The reason and authority for this are stated at length and with precision by JUDGE BRANNON in *Kinney* v. *Baltimore & Ohio Ass'n*, 35 W. Va. 385, and need not be repeated here.

As the record discloses no error, the judgment must be affirmed.

*Affirmed.*