## McKEE v. GRIMM et al.

No. 6715. Opinion Filed March 7, 1916.

Rehearing Denied May 16, 1916.

(157 Pac. 308.)

**OIL AND GAS—Lease—Remedies of Lessor.** Where an oil and gas lease contract provides that the lessee shall complete a well within six months from the date thereof, or pay the lessor rental at the rate of $20 per month for each additional month such completion is delayed from the time mentioned for completion, until a well is completed, **held,** that such provision is for the benefit of the lessor only, and that for nonperformance on the part of the lessee he may either cancel and terminate the lease, or may, if he chooses, collect the rents stipulated in the lease, until such leased premises are reconveyed, or until the term of the lease expires.

(Syllabus by Brett, C.)

*Error from County Court, Creek County;*
*Warren H. Brown, Judge.*

Action by Cora B. McKee, executrix of the estate of James G. Unger, against D. L. Grimm and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*J. R. League,* for plaintiff in error.

*J. R. Miller (J. E. Thrift* and *T. R. Dean,* of counsel), for defendants in error.

Opinion by BRETT, C. This action was commenced in the lower court by the plaintiff in error, as plaintiff, against the defendants in error, as defendants, and the parties will be referred to as they appeared in the lower court. The action is brought to recover upon an oil and gas lease, which lease is in the form of the usual oil and gas lease contracts; and the clause relied upon as entitling the plaintiff to recover the amount sued for is the following:

"Second party covenants and agrees to locate all wells so as to interfere as little as possible with the cultivated portions of the premises, and further to complete a well on said premises within six months from the date hereof or pay at the rate of twenty dollars per month in advance for each additional month such completion is delayed from the time above mentioned for the completion of such well until a well is completed; and full liquidation of all rental under this provision during the remainder of the term of this grant."

The defendants, however, rely upon another clause in the lease as relieving them of all liability, which clause provides that:

"* * * Upon payment of one ($1.00) dollar at any time by the party of the second part, their heirs or assigns to the party of the first part, his heirs or assigns, the second party, their successors or assigns shall have

the right to surrender this grant for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine and this grant become absolutely null and void" —and plead that:

". * * * During the springtime of the year 1911 these defendants offered to execute and deliver at any time the said lessor might desire a release or other writing necessary to show upon the records of the office of the register of deeds of the county in which said lands was situate that these defendants neither had or claimed any right, title, or interest in and to said lease or the leasehold estate sought to be created thereby; that one ———— McKee, whose full name is unknown to these defendants at this time, who was the duly authorized and acting agent of the said James Unger, conferred with the defendants during the springtime of said year 1911 with regard to said lease, at which time these defendants declared that they had abandoned the said lease and stood willing to execute said release, and pay said sum of $1 if he desired the same, to clear the records; that at the time of the said conversation the said ———— McKee, well knowing that these defendants had abandoned the said lease as aforesaid, neither asked for nor indicated to these defendants that his principal expected any rental on account of the nondevelopment of the said premises."

By reply plaintiff denied this allegation in defendants' answer, which made the defense above set out an issue of fact; and, it being an affirmative defense, it behooved the defendants to prove this allegation. And they insisted in their brief that they did prove it. But we have carefully examined the record, and fail to find any evidence that would even justify an inference that they, "in the springtime of 1911," or at any other time, ever offered to execute and deliver to the lessor or his agent a

release or other writing to show that "defendants neither had or claimed any right, title, or interest in or to said lease or leasehold estate sought to be created" by this lease. Had this allegation been sustained, it would have distinguished this case from *Cohn v. Clark,* 48 Okla. 500, 150 Pac. 467, and would have terminated this contract; but since it was not sustained, we see no distinction between this case and *Cohn v. Clark, supra,* except the contract in the case at bar is, perhaps, a little stronger in favor of the lessor. And in *Cohn v. Clark,* this court, in a well-considered opinion, held that in the absence of a release or reconveyance by the lessee, as provided for in the surrender clause in the contract, "the lessor was entitled to the stipulated rental until a well is drilled," and says:

"In the contract under consideration, it will be presumed that the parties thereto worded the same so that it expressed the actual contract which they intended to make, and it is not for this court, by judicial interpretation, to add to and take from the same, but to construe it as it actually is; and we have no power to relieve either therefrom, even though we might conclude that its terms are greatly to the advantage of one and much to the detriment of the other, in the absence of fraud or mistake, neither of which occurs herein, either in the pleadings or in the proof. We have no authority in actions at law, as in the case at bar, to inquire whether the contract is fair and equitable, but can look only to the terms of the contract and construe the same according to the intendment of the parties, as far as the same can be arrived at by placing the commonly accepted judicial construction and acceptation of the language used therein. The lease under consideration starts with the statement that 'the consideration is $1.00 and covenants and agreements therein contained,' and in the first clause of the lease it is stipu-

lated: '1st. Second party agrees to commence operation on said premises within, on or before January 1, 1910, from this date, or thereafter to pay to the first party one dollar per acre per annum annually until a well is drilled, or the property hereby granted is conveyed to the first party'—and then the sixth paragraph is: '6th. Second party may at any time remove all his property and reconvey the premises hereby granted and thereupon this instrument shall be null and void.' Plaintiff signed a five-year oil lease, and in consideration therefor defendant agreed to commence operations on the premises by January 1, 1910, or in lieu thereof to do one of two things: (1) To pay the lessor $1.00 per acre per annum until a well is drilled; or (2) to reconvey the premises."

But in that case it was contended by the lessee that in order to relieve himself from liability to pay the stipulated rental it was unnecessary for him to comply with the conditions of the surrender clause, or execute a release, or reconveyance—

"but that upon a failure upon his part to either begin operations or to pay the specified rentals as provided in the contract, *ipso facto*, there was a self-executing automatic release which relieved him of all liability."

This is one of the contentions of the defendants in the case at bar; but the court in *Cohn v. Clark* completely answers this contention, saying:

"If the lessee's contention be true, then we would meet the anomalous condition of a party profiting by his own breach or gaining advantage by his own wrong. Under such a contract the lessor binds his hands and gets nothing for the lease unless the pleasure of the lessee moves him to action. Should we determine that a failure to pay the rentals stipulated, after a default in beginning operations, *ipso facto*, operates to release the lessee from all liability, why incumber the lease with the sixth para-

graph, known as the 'surrender clause'? If failure to pay rentals nullifies the lease automatically, then there is no use of the surrender clause at all. It would be useless to insert a surrender clause in a lease requiring the lessee to go to the trouble and expense of executing an actual reconveyance, when there is a provision in the lease for his advantage which is self-executing upon his failure to pay the rentals. We must construe this contract so as to give some effect and meaning to every part of the same. We are not permitted to say that the parties hereto have deliberately inserted a clause in this contract that is useless and unnecessary, when a fair and reasonable construction will give weight and effect to it, and, following this line, we conclude that if the surrender clause has been inserted in the contract for the benefit of the lessee, and affords him an easy and expeditious way of ridding himself of the contract and its liability, the forfeiture clause in paragraph 1 must have been inserted for the benefit of the lessor only. This construction will give both of the clauses the weight and effect that was reasonably intended for them, and gives both of the parties to the contract a means of protection and a way of relieving themselves of the contract. If we place the construction upon the contract as claimed by the lessee, we must conclude that the lessor has been so improvident as to execute a contract giving to the lessee two ways of ridding himself of the contract at his pleasure, while either was sufficient, and at the same time the lessor remains tied up at the pleasure of the lessee. Further, it is a fair inference that it was intended in the contract that the lessee, to surrender the' lease, should tender to the lessor a formal reconveyance of the leased premises, because these oil leases, to a certain extent, are a cloud upon the title to the real property and make it difficult to pass title to a purchaser or to effect a lease to a new party while the first lease appears of record and in apparent force, and for this reason we believe that the forfeiture clause was for the benefit of the

lessor only, while the surrender clause was for the benefit of the lessee."

And it is generally held by the courts, in construing contracts similar to the one under consideration in the case at bar, that a clause providing that a well shall be drilled within a specified time or the lessee will pay a stipulated rental, is for the benefit of the lessor only, and that for nonperformance on the part of the lessee he has two remedies; he may either cancel and terminate the lease for nonperformance, or he may, if he chooses, collect the rents stipulated in the lease. As stated by the court in *Cohn v. Clark, supra,* parties may so word their contract that a failure to commence operations within the time specified, or to pay the rents, will, *ipso facto,* render the lease null and void, and automatically relieve the lessee of liability; as in *Deming Investment Co. v. Lanham,* 36 Okla. 773, 130 Pac. 260, 44 L. R. A. (N. S.) 50. But to effect this end it must be expressly stipulated in the lease contract that the lease shall become null and void at a certain time, unless the lessee begins operations or pays the rental stipulated. Under such a contract as that, a failure to drill with'n the time specified, or to pay the rents stipulated, automatically terminates the lease, and releases the lessee from any liability. But there is no such provision in the contract under consideration; and hence that class of cases, construing contracts which have such a clause in them, are not applicable to the facts in the case at bar. Archer on Oil and Gas, secs. 1, 2; *Lawson v. Williamson, C. & C. Co.,* 61 W. Va. 669, 57 S. E. 258; *Woodland Oil & Gas Co. v. Crawford,* 55 Ohio St. 161, 44 N. E. 1093, 34 L. R. A. 62; *Galey v. Kellerman,* 123 Pa. 491, 16 Atl. 474; *Wills v. Gas Co.,* 130 Pa. 222, 18 Atl. 721, 5 L. R. A. 603; *Leatherman v. Oliver,* 151 Pa.

646, 25 Atl. 309; *Phillips v. Vandergrift*, 146 Pa. 357, 23
Atl. 347; *McMillan v. Philadelphia Co.*, 159 Pa. 142, 28
Atl. 220; *Cochran v. Pew*, 159 Pa. 184, 28 Atl. 219; *Conger v. Transportation Co.*, 165 Pa. 561, 30 Atl. 1038. This
doctrine is reaffirmed in *Henne v. South Penn. Oil Co.*,
52 W. Va. 192, 43 S. E. 147; *Hancock v. Diamond Glass
Co.*, 162 Ind. 146, 70 N. E. 149; *Edmonds v. Mounsey*, 15
Ind. App. 399, 44 N. E. 196, and cases cited; Thornton,
The Law Relating to Oil and Gas, sec. 151; *Ray v. Western Pennsylvania Nat. Gas Co.*, 138 Pa. 576, 20 Atl. 1065,
12 L. R. A. 290, 21 Am. St. Rep. 922; *Clark v. Jones*, 1
Denio (N. Y.) 516, 43 Am. Dec. 706; *Galey Bros. v. Kellerman*, 123 Pa. 491, 16 Atl. 474; *Jones v. Western Pennsylvania Nat. Gas Co.*, 146 Pa. 204, 23 Atl. 386; *Ogden v.
Hatry*, 145 Pa. 640, 23 Atl. 334; *Smith v. Miller*, 49 N. J.
Law, 521, 13 Atl. 39; Taylor, Land. & T., sec. 492; 1
Smith, Lead. Cas. 102, 119.

The court in the case at bar directed a verdict for the
defendants, which, we think, under the contract and evidence in this case, the law as laid down in *Cohn v. Clark*,
and the great weight of authority, was error. We therefore recommend that the judgment be reversed, and the
cause remanded for further proceedings not inconsistent
with this opinion.

By the Court: It is so ordered.