# John J. Steiner *v.* Wm. J. Marks, Dr. W. C. McCandless and Edward Bartley. Appeal of Wm. J. Marks and W. C. McCandless.

*Lease—Oil and gas lease—Landlord and tenant—Forfeiture—Waiver—Declarations—Question for jury.*

The lessor in an oil and gas lease will not be permitted to enforce a forfeiture of the lease for a delay of one day in the payment of rental, where by his acts and declarations he has lured the lessee into the belief that a forfeiture will not be enforced for so short a delay.

Upon the evening of the last day upon which rent was to be paid under an oil and gas lease, the lessee went to the lessor's house in the evening and roused the lessor from his bed to make payment. The lessee testified: " I says to him, I came up to pay this rental. And he says, What brought you here at this time of night. I said to him, I thought you would kick or something of that kind if I didn't come. And he says, You ought to have known me better than that, to-morrow would have done as well, or something like that." The second quarter was paid a few days before it was due. On the third day before the third quarter was due the lessor being at the lessee's barn, the lessee asked him to wait until he could go to his house for the money to pay the rental. When the lessee returned from the house which was a short distance from the barn, the lessor had gone. The rent was tendered the day after it was due. The lessor then declared a forfeiture of the lease. *Held*, that the case was for the jury under proper instructions to determine whether the acts and declarations of the lessor were calculated to lead, and did lead the lessee into a day's default, and whether by such acts and declarations he had not waived his right to forfeit the lease for the ground stated.

Argued Oct. 21, 1895. Appeal, No. 39, Oct. T., 1895, by Wm. J. Marks and W. C. McCandless, from judgment of C. P. Butler Co., Dec. T., 1894, No. 245, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for damage to oil property. Before STEWART, P. J., of the 39th judicial district, specially presiding.

The facts appear by the opinion of the Supreme Court.

The court charged, inter alia, as follows:

Having carefully reviewed all the evidence in regard to this matter, I fail to see anything at all which connects the one payment with the other, or that would indicate that defendants

were influenced by this remark of Steiner to allow the time of payment to go over. Both defendants were upon the stand. Neither of them, as I recall their testimony, states that they were in any way influenced by this conversation with the plaintiff, or that but for this conversation they would have paid the rental on the 12th of December, or before that, or that they were misled by it in any way. [For all that appears to the contrary in the evidence, the defendants may have fully determined upon the surrender of this lease, and their delay may have been in pursuance of this determination, and their tender on the 13th day of December may have been made by reason of a change of mind on their part. For all that appears to the contrary in the evidence, this may have been the case. We have no way to test that. There is nothing in the evidence which would in any way enable you to determine that the defendants did not have a deliberate intention to surrender this lease, and that this delay was in consequence of this determination on their part.] [2] This being so, in our view of the case, there is no question of fact to submit to you, gentlemen. There is no question in it for you. We think that the failure of the defendants to pay the quarterly rental due on the 12th day of December, when due, did work a forfeiture and that the plaintiff had the right to declare this lease at an end, and that the defendants' rights under that lease then and there ended, and their subsequent entry was a trespass. In this view of the case and under these instructions it will be your duty to find the defendants, W. J. Marks, W. C. McCandless and Edward Bartley, guilty of trespass.

Verdict and judgment for plaintiff for $20.00. Defendants appealed.

*Error assigned*, among others, was above instruction, quoting it.

*Newton Black, Lev. McQuiston* with him, for appellants.—If parties who have entered into definite and distinct terms involving certain legal results, or legal forfeiture, afterwards of their own act enter upon terms which have the effect of leading one of the parties to suppose strict compliance will not be

enforced, the party so doing will not be allowed to do so where it would be inequitable : Bispham's Equity, 3d ed. sec. 181.

Where there has been liberal indulgence on both sides, one party cannot suddenly rescind without fair warning to the other of intention to insist upon a literal compliance with the contract in the future: Forsythe v. N. A. Oil Co., 53 Pa. 173 ; Hatton v. Johnson, 83 Pa. 219 ; Duffield v. Hue, 129 Pa. 109 ; Duffield v. Rosenweig, 144 Pa. 526.

Forfeitures are not favored either at law or in equity, and among the least favored have always been those founded on mere delay in the payment of money : Gas Co. v. DeWitt, 130 Pa. 254.

*John M. Thompson, W. C. Thompson* with him, for appellee, cited Lynch v. Gas Co., 165 Pa. 518.

OPINION BY MR. JUSTICE DEAN, January 6, 1896 :

On the 12th of April, 1893, Marks and McCandless, two of defendants, Bartley being their employee, by writing under seal, leased from Steiner, plaintiff, for a term of ten years, the oil and gas under his farm of eighty-seven acres in Middlesex township, Butler county ; the lessees to hold the premises for the term, and as much longer as oil and gas were produced in paying quantities, Steiner, however, to have the enjoyment of the land for farming purposes, subject to the lease.

In consideration therefor, Marks and McCandless agreed to deliver to Steiner, in tanks or pipe lines, one eighth of the oil produced; also, to pay him $100 annually for each producing gas well, and furnish him gas for his house free. They further covenanted to commence a well within sixty days, or in default thereof pay to Steiner a monthly rental of $7.25 ; the monthly rental to be deposited to Steiner's credit at his residence, or paid directly to him. A failure to commence the well or pay the monthly rental, was to render the lease null and void, only to be renewed by mutual consent. Then, in the last stipulation, it is agreed the rental shall be paid quarterly in advance.

The defendants had leased other land in the neighborhood and were actively engaged in successfully drilling wells thereon, at the time the sixty days were about up, within which they

were to commence a well on Steiner's land; not being ready to begin just at that time, Marks went to Steiner's house, the last day, June 12th, to pay in advance the first quarter's rental; when he arrived there, Steiner had gone to bed, but got up and received the money; at the same time said to Marks, that to-morrow would have done as well, meaning for the payment of the money. The next quarter was paid September 4th, some days before it was due; the next quarter was payable 12th of December; on the 8th or 9th of that month Steiner was at McCandless's barn; the latter was ready and willing to pay the quarter due on the 12th, but Steiner evaded the tender by quickly leaving the premises. On the 13th, the day after this quarter was due, Marks called upon Steiner, and tendered him the money, but he declined to receive it, on the ground that it was too late. McCandless testified that a week after when he urged Steiner to take the money, stating to him that they intended to insist on their rights under the lease, Steiner replied he had a chance to lease at a bigger bonus, and if they would pay it he would renew the lease. Thus matters stood until about a month later, when Marks and McCandless went upon the land to put up a drilling rig; thereupon Steiner brought this action of trespass; defendants pleaded the general issue and right of possession under the lease. At the trial, the learned judge of the court below, being of opinion the neglect of defendants to actually pay or tender the quarterly payment due December 12th on that day worked a forfeiture of the lease, instructed the jury to find for the plaintiff; they accordingly did so, and assessed his damages at $20.00. From the judgment entered on the verdict, defendants appeal, assigning for error the peremptory direction of the court, and averring it was for the jury to determine from the evidence whether Steiner, by his declaration and conduct, had led them to believe strict compliance with the terms as to day of payment would not be enforced.

It is unnecessary to take up the assignments of error in their order, for there is but one point upon which the appeal can be sustained. Should the court have submitted the evidence tending to show a waiver of strict compliance by plaintiff to the jury?

It is true, if reference be had to the written contract, and

the tender of payment on the 13th instead of the 12th, Steiner had a legal right to insist on a forfeiture.   In this class of agreements, this court has frequently so held, where the intention of the parties, by their written language, is to end whatever estate or right the lessee has in the oil or gas, the subject of the contract, by default either in operating or making payment; but we have also held, that the party claiming to enforce a forfeiture must exercise his right promptly, and it must not be unconscionable : Westmoreland Gas Co. v. DeWitt, 130 Pa. 235; Thompson v. Christie, 138 Pa. 230; Lynch v. Gas Co., 165 Pa. 518.   That is, the rigidness of the rule, as applicable to the written contract, the parties themselves may, by their declarations and conduct subsequent to the writing, mitigate. Bispham's Eq. sec. 181, states the rule thus :

" If parties who have entered into definite and distinct terms involving certain legal results, or legal forfeiture, afterwards, of their own act, enter upon terms which have the effect of leading one of the parties to suppose strict compliance will not be enforced, the party so doing will not be allowed to do so where it would be inequitable."

In view of this rule, note the evidence of defendants.   The first quarterly payment was due the 12th of June ; Marks, assuming the right of Steiner to declare a forfeiture if there was default, and that he would probably exercise the right, called upon him at 8 o'clock in the evening, accompanied by a witness, Truver, and roused Steiner from his bed to make payment; this is his testimony as to what occurred : " I says to him, I came up to pay this rental.   And he says, What brought you here at this time of night.   I said to him, I thought you would kick or something of that kind if I didn't come.   And he says, You ought to have known me better than that, to-morrow would have done as well, or something like that."   Truver testifies that Steiner said to Marks " that he didn't need to be in a hurry, or something like that, for to-morrow would have done as well.   That he ought to have knowed him better than that."

Assuming the jury would have believed these two witnesses, what might have been reasonably implied from the conduct and declarations of Steiner?   Marks, by the very fact of calling with a witness to make payment at an unseasonable hour, dis-

closed a consciousness of the peril of default, without even confessing it; but, in answer in his own way to Steiner's question, candidly says so; in effect, says, I was afraid if payment were not made this day, you might declare the lease forfeited. What is Steiner's reply? " You ought to have known me better than that, to-morrow would have done as well." What, in view of the circumstances, was the purport of such language, or rather what reasonable interpretation might the jury have put upon it? It seems to us they might have found that Steiner meant, and Marks believed, a payment of an installment the day after it was due was soon enough, and that he, Marks, ought to have known him better than to think him capable of claiming a forfeiture as the penalty of a few hours' default. On the 13th of December, the day after it was due, that quarterly payment is tendered; he declines it, because it ought to have been made the day before; he had said, to-morrow would do as well, he now says to-morrow is too late; he had said Marks ought to have known him better than to suppose he would reclaim his grant for the default of a few hours; he now, for this slight default, declares a forfeiture.

Nor was Steiner misled by the default into the belief that defendants intended to abandon the lease by a neglect or refusal to pay on the 12th, for McCandless testified that on the 8th or 9th, only three days before the 12th, Steiner called on him at his barn, and this occurred: "I says to him, that rental will soon be due, John, and I may as well pay it now; I knew it would be due in a few days, and I told him it would save us a trip over there, and he says, never mind, or something like that. But I told him I would just pay him now. I was cleaning the horse at the time, and I put my hand down in my pants pocket and I found I had on my old clothes and had no money in them. So I said to him to wait a little, I will go up to the house and get the money, and I started right up to the house, and he walked right out of the barn and drove right off. The house is a little distance from the barn, and when I got back he was gone."

This readiness of McCandless three days before to pay the same quarter at the barn, and Steiner's evasion of an opportunity for formal tender, while indicating no unwillingness to receive, is significant of an intention by the first conversation

to lure the defendants into a sense of security, and bring on them the very penalty Marks feared. Was not the natural effect of his language and conduct to lead the defendants, as stated in the equity rule, to suppose strict compliance would not be enforced? If so, then, under the same rule, the party so doing will not be allowed to enforce a forfeiture, because it would be inequitable. The learned judge of the court below was of opinion that, from all that appeared to the contrary in the evidence, the defendants were not influenced by these declarations of Steiner; but that was for the jury; if Steiner had in effect said to Marks, a default of one day is immaterial, I will not declare the lease forfeited for that; and there was one day's default and then a tender, it was for the jury, in view of all the circumstances, to determine whether defendants had been misled by the plaintiff. Clearly, if McCandless was believed, they had no intention of permitting a forfeiture of the lease, for he was ready and attempted to make the payment three days before it was due; and if he be believed, Steiner well knew they expected to hold the lease by a substantial observance of its terms.

We think the case was one for the jury, not under the exact instructions as framed in defendant's points, but under instructions indicated in our discussion of the question as to whether the court erred in wholly withdrawing this branch of the case from the jury; it is for them to determine what was said, and what, under the circumstances, was intended and understood by the parties. If they find as a fact the declarations of Steiner were calculated to lead and did lead defendants into a day's default, then it would be inequitable in Steiner to enforce a forfeiture, and he cannot recover.

To this extent only are the assignments of error sustained.

The judgment is reversed and a venire facias de novo awarded.