## MITCHELL *et al.* v. PROBST.

No. 5407.    Opinion Filed October 19, 1915.

(152 Pac. 597.)

1. **MINES AND MINERALS—Oil and Gas Lease—"License."** An agreement in the form of a lease for a certain term of years, granting the right to explore for gas and oil, is more like a license than an estate in the land.

2. **SAME—Construction—Option.** Where an oil and gas lease provided "that, if a well is not drilled on said premises in one year from date hereof, then this lease and agreement shall be null and void, unless the party of the second. part, within each and every year in advance, after the expiration of the time above mentioned for the drilling of a well, shall pay a rental of $2.50 per acre for the first year," etc., **held,** that such provision amounts to an option, and gives the lessor the right to cancel unless the conditions are complied with.

3. **SAME—Right to Cancel.** Where, in such case, the sum agreed to be paid for the option is not paid at the time agreed upon, nothing else appearing, the lessor has the right to cancel the lease.

4. **SAME—Option—Notice of Cancellation.** In such case, in the absence of any provision in the contract, the lessor is not required to give notice of his intention to cancel.

5. **CONTRACTS—Form—Time—Essence of Contract.** Although it is provided by Rev. Laws 1910, sec. 986, that, "Time is never considered as of the essence of a contract, unless by its terms expressly so provided," no particular form of expression is required, if it appears from the provisions contained in said contract that it was the intention of the parties that time should be of the essence thereof.

6. **CONTRACTS—Option—Time—Essence of Contract.** In case of an option time is of the essence of the contract, unless the contract expressly provides that it shall not be.

(Syllabus by Devereux, C.)

*Error from District Court, Tulsa County;*
*L. M. Poe, Judge.*

Action by George C. Probst against John O. Mitchell and another. Judgment for plaintiff, and defendants bring error. Affirmed.

This action was commenced on the 20th day of July, 1912, by the defendant in error against the plaintiffs in error, praying for the cancellation of a certain oil and gas lease made by Probst to the said Mitchell and Brown on November 10, 1910. It is alleged in the petition that Probst executed a lease on certain lands in Tulsa county, Okla., and that the said lease contained the following provision and condition, to wit:

"That, if a well is not drilled on said premises within one year from date hereof, then this lease and agreement shall be null and void, unless the party of the second part, within each and every year in advance, after the expiration of the time above mentioned for the drilling of a well, shall pay a rental of $2.50 per acre for the first year and $5.00 per acre thereafter for every year it is not canceled, until a well is drilled thereon or until this lease is canceled as hereinafter provided."

It is further alleged in the petition that the defendants did not drill the well within one year, and, furthermore, that they neglected and defaulted in the payment of $2.50 per acre, or the sum of $25, which became due on November 1st.

The plaintiffs in error answered, admitting the execution of the lease, and admitting that they had not drilled the well within the year, and alleging that the lessor had constituted the Central National Bank of Tulsa his agent for the collection of the rentals, and that they had paid to the Central National Bank, for the use and benefit of said lessor, on the 7th day of December, 1911, the sum of $25, which had been placed to the account of the

lessor in said bank. To this answer the defendant in error replied by verified general denial, and specifically denied that the Central National Bank of Tulsa was his agent for the collection of the rentals.

The evidence on behalf of the plaintiff was that no well had been drilled on the land, and that the rent was not paid when due on November 1, 1911; that he called at the Central National Bank about the 3d or 4th of November, 1911, and was informed that no money had been paid there for him, and about December 3rd or 4th he made a like inquiry, with the same result; that on December 7, 1911, the plaintiffs in error deposited $25 to the defendant in error's credit, which it appears was for the rent due on November 1, 1911, and on December 5, 1912, a deposit of $50 was made in said bank to defendant in error's credit, but there is no evidence in the record that the defendant in error ever received this money, or ratified its payment to the bank, or knew of it until in May, 1912 (the record is silent as to whether he had such knowledge before serving the notice of forfeiture), and there is no evidence that the bank was Probst's agent, except the provision in the lease that:

"All rentals and other payments may be made direct to the party of the first part, or may be deposited to his credit in the Central National Bank."

There was also evidence that on May 27, 1912, the defendant in error served notice on the lessees declaring the lease forfeited for failure to perform the conditions of the lease by either drilling a well or paying the rent. There was no evidence that the lessees had ever taken possession under the lease. The defendants in the trial court demurred to this evidence, which demurrer was overruled, and, they declining to proceed further, judg-

ment was rendered against them, and they bring the case to this court by petition in error and case-made.

*Martin & Moss,* for plaintiffs in error.

*John E. Lydecker* and *Charles A. Steele,* for defendant in error.

Opinion by DEVEREUX, C. (after stating the facts as above). In *Frank Oil Co. v. Belleview Gas & Oil Co.,* 29 Okla. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487, the provision of the gas and oil lease under consideration was:

"If no well is commenced on said premises within one year from this date, then this grant shall become null and void, unless second party shall pay to the first party $80 for each year thereafter such completion is delayed, said rental to be paid quarterly in advance."

The provision is practically the same as in the case at bar, and in construing it the court say:

"Here we have a contract that is unilateral; the lessee being bound to do nothing, except at his own option. It has expended no money by way of developing the lessor's property. The well that was sunk on the Gibson tract was in all probability sunk in accordance with a contract made with the owner thereof to prevent a forfeiture of that lease and such was in all probability the case where other wells were sunk on adjoining lands. The lessor had no direct interest, so far as this record discloses, in the development of the Gibson tract. This contract clearly contemplated the exploration for oil as a speculation or promotion an the part of the lessee, which is permissible under the law. The consideration for the first year's delay in making this development on lessor's tract was $200 cash in hand paid, and the commencement within 30 days from the date of the lease of the sinking of a well on the Gibson tract. That year elapsed, and no well was sunk or begun on the tract of the lessor. The lessee had the option to be allowed ad-

ditional time as delay in the exploring of lessor's tract by paying to the lessor $80 for each year thereafter such completion was delayed; such delay money to be paid quarterly in advance. This lease being an option, is the anomalous construction to be here adopted of the language 'then this grant shall become null and void unless second party shall pay to the first party eighty ($80.00) dollars for each year thereafter such completion is delayed, said rental to be paid quarterly in advance,' so as to change this part of the lease from an option to a tenancy, creating the relation of landlord and tenant for a year when the first quarterly payment in advance is made, thereby obligating the lessee to pay the other three quarterly payments? This would violate the settled rule of construction that an option is to be construed liberally in favor of the party granting it and strictly against the holder thereof."

In *Barnsdale v. Owen*, 200 Fed. 519, 118 C. C| A. 623, the court say:

"An agreement in the form of a lease for a limited term of years, such as these were, granting the right to explore for gas and oil, and to retain that found and extracted, is of a peculiar class. The interest of the lessee is more like a license than an estate in the land itself."

In *Kolachny v. Galbreath*, 26 Okla. 722, 110 Pac. 902, 38 L. R. A. (N. S.) 451, it is held:

"When contracts are optional in respect to one party, they are strictly construed in favor of the party that is bound and against the party that is not bound."

And in *Deming Investment Co. v. Lanham*, 36 Okla. 773, 130 Pac. 260, 44 L. R. A. (N. S.) 50, quoting from Thornton's Law Relating to Oil and Gas, it is said:

"Forfeitures, however, on the part of the lessee in a gas or oil lease, which arise by reason of his neglect to develop or operate leased premises are rather favored by

the law, because of the peculiar character of the product to be provided."

And see *Cohn v. Clark,* 48 Okla. 500, 150 Pac. 467.

It is true that in *Frank Oil Co. v. Belleview Gas & Oil Co., supra,* it is said:

"This contract having been entered into prior to the erection of the state, section 1118, Compiled Laws of Oklahoma 1909 (Rev. Laws 1910, sec. 968), which provides, 'Time is never considered as of the essence of a contract, unless by its terms expressly so provided,' has no application," etc.

But this statute does not mean that time is never the essence of a contract, unless these words are used in it. In *Cooper v. Ft. Smith & W. R. Co.,* 23 Okla. 139, 99 Pac. 785, it is held:

"Although it is provided (Wilson's Rev. & Ann. St. 1903, sec. 809) that 'Time is never considered as of the essence of a contract, unless by its terms expressly so provided,' no particular form of expression is required, but it must appear from the express provisions contained in such contract that it was the intention of the parties thereto that time should be the essence thereof." *Federal Trust Co. v. Coyle,* 34 Okla. 635, 126 Pac. 800; *Green Duck Co. v. Patterson,* 36 Okla. 392, 128 Pac. 703.

The language of this contract is set out above, and, in our opinion, brings it within the reasoning of the above citations.

Apply the principles settled in these cases to the case at bar. The plaintiffs in error had only a license to explore the land for gas and oil for the time mentioned in the lease, with an option to extend the license upon the payment of the sums provided in the lease at the time therein set out. The plaintiffs in error never took pos-

session, did nothing towards exploring the land for gas and oil, and failed to secure a prolongation of their license by making the payment for this privilege at the agreed time. As construed by this court in the cases above cited, the legal effect of the contract was that, if a well was not drilled on the land in one year from the date of the contract, the agreement should be null and void, but with an option to the plaintiffs in error to continue their license under the agreement by paying in advance a rental of $2.50 per acre for the first year, and $5 per acre thereafter until a well was drilled or the lease canceled. They now ask this court to change their contract by allowing them to pay the sum for the extension of the option to some other time than that specified in the contract. This we cannot do under the evidence in this case.

The plaintiffs in error contend that the forfeiture cannot be upheld in this case, because the defendant in error failed to give notice of his intention to take advantage of the failure to pay the money when, by the terms of the contract, it was payable. But we can see no merit in this position. The contract did not provide for notice, and the plaintiffs in error knew what the contract provided as well as the defendant in error did. Should we now decide that notice was necessary before the defendant in error could declare the forfeiture, we would be adding something to the contract which the parties did not see fit to incorporate in it. Plaintiffs in error cite *Sayers v. Kent,* 201 Pa. 38, 50 Atl. 296, but that case does not apply, because of the payment of the money into the bank prior to expiration of the time limited in the contract. *Steiner v. Marks,* 172 Pa. 400, 33 Atl. 695, is also cited by plaintiffs in error, but it has no application, as in that case the lessor told the lessee that a day or two

in the payment of the money made no difference, and on the last day provided for the payment in the contract purposely absented himself so as to prevent the money from being paid.  We find nothing in the conduct of the defendant in error which would make this case applicable.

It is also contended by the plaintiffs in error that by providing in the lease that the payment might be made to the Central National Bank, the bank was constituted the agent of the lessor, and it was given authority to waive the forfeiture by receiving the money after the specified time.  But in our opinion, there was no question of agency in the matter.  The contract provided, for the convenience of the parties, that a deposit in the bank to the credit of the lessor should be a sufficient compliance with the contract.  Undoubtedly such a deposit before the right to a forfeiture had accrued would have been a fulfillment of the conditions of the contract, and would have prevented a forfeiture.  But we look in vain for any authority given the bank to waive any rights of the lessor.  In fact, under the provisions of the contract, and in the absence of any other evidence, the bank was only a depository, agreed upon by the parties as a convenient place in which to deposit the money due the plaintiff, but with no authority to waive any rights of either party, or to bind either party further than to· receive the money when paid.  If the money had been deposited in the bank before the expiration of the time limit, it would have been a sufficient compliance with the terms of the contract; otherwise it is not.

We therefore recommend that the judgment be affirmed.

By the Court:  It is so ordered.