## NEW ENGLAND OIL & PIPE LINE CO. v. ROGERS et al.

No. 19998.   Opinion Filed Nov. 10, 1931.

Rehearing Denied Feb. 9, 1932.

Anglin & Stevenson and Silverman & Rosenstein, for plaintiff in error.

Chas. L. Orr and A. M. Woodford, for defendants in error.

RILEY, J. This is an action brought by defendants in error, herein referred to as plaintiffs, against plaintiff in error, hereinafter referred to as defendant, to recover damages. The action is one in the nature of slander of title for an oil and gas lease based upon the filing of an affidavit in the office of the county clerk, and causing the same to be recorded, which was in the nature of a notice to the public that defendant claimed an oil and gas lease on the same premises, prior and superior to that of plaintiffs.

Plaintiffs allege that on April 21, 1923, they purchased from C. M. and Leean Johnson, husband and wife, an undivided one-half interest in an oil and gas lease covering 197 acres of land in Hughes county (describing it) ; that defendant, with knowledge of plaintiffs' ownership of said lease, and with a purpose of oppressing, harassing, and annoying and damaging plaintiffs, and with malice and for the purpose of clouding the plaintiffs' title, on April 27, 1923, filed in the office of the county clerk of Hughes county a verified notice to the public signed by one John J. Moran as follows:

"Notice to the Public.

"I, John J. Moran, state that I am the president of the New England Oil & Pipe Line Company; that on the 11th day of April, 1922, C. M. Johnson and Leean Johnson, his wife, duly made, executed, and delivered to me an oil and gas lease covering the following described lands in Hughes county, Okla.

"The north half of southwest quarter & southeast quarter of southwest quarter & west half of southeast quarter (less 2.99 acres as right of way) of section 8, * * *

"That said lease was duly filed for record on May 80, 1922, in the office of the county clerk of said county, and is therein duly recorded in book 22, p. 626.

"I further give notice that all the conditions of said lease have been duly complied with, and that all rentals accruing thereunder have been duly paid or deposited as required by the terms and provisions of said lease, and that said lease is now a valid, legal, and subsisting lease; and all persons are hereby notified and warned not to cloud the title of the said New England Oil & Pipe Line Company to its said lease by taking any oil and gas lease on said lands or on any part thereof from the said C. M. Johnson and wife, their heirs or assigns.

"John J. Moran."

That said notice was filed for record and recorded in book 42, p. 359 (the land described in the notice included that covered by plaintiffs' lease).

It was further alleged that defendant had no interest in the land covered by plaintiffs' lease, and in so far as the statements made in said notice affected that land, such statements were wholly false and known to be so by defendant at the time said affidavit was made and filed.

It was then alleged that the value of plaintiffs' lease was $2,500; that plaintiffs had a bona fide offer of said sum for the said lease, but because of the notice mentioned being of record, the purchaser refused the title, and plaintiffs were thereafter and thereby prevented from making the sale, until, because of failure of developments for oil in that vicinity, the lease became worthless; that by reason, thereof plaintiffs alleged they were damaged in the sum of $2,500, for which they prayed judgment. They also asked for $499 punitive damages.

Defendant, besides a general denial, pleaded the statute of limitation, asserting that

the one-year limitation applied, and further alleged that it held an oil and gas lease covering the same land together with other lands; that it was required to pay certain annual rentals and did pay the same when due, but through mistake of its bookkeeper it remitted the full amount of annual rental to the original owner of the land, overlooking the fact that a part thereof had been sold, and that before it had discovered its mistake plaintiffs had acquired their lease and had so notified defendant; that when this was learned, Moran, in order to make the facts clear on the record, and after consulting counsel, made and filed the affidavit; that in doing so he laid all the facts before counsel and was advised by counsel to make and file the affidavit for the purpose of giving notice of its claim; it denies that it acted in bad faith or maliciously, and that whatever was done by Morgan was done on his own initiative and without corporate action on its part.

Plaintiffs replied by general denial of all the allegations contained in the answer which in any wise controverted the allegations of their petition.

The cause was tried to a jury, resulting in a verdict for plaintiffs in the sum of $2,462.50, upon which verdict, after a motion for new trial was overruled, judgment was entered, and defendant appeals.

There are eight assignments of error presented under four general propositions.

It is first asserted that under the rule announced by this court in Ward v. Mid-West & Gulf Co., 97 Okla. 252, 223 P. 170, in order for plaintiff to recover in an action of this nature, he must prove five things.: First. The publication of the words. Second. That they were false. Third. That the publication was malicious. Fourth. That he sustained special damages on account thereof. And Fifth. That he owned or possessed an interest in the property slandered.

It is contended that there is no evidence to sustain the second, third, and fifth of these prerequisites. First, defendant asserts that no malice was shown.

It seems well settled that in an action of this nature, which is usually denominated "an action for damages for slander of title, by a sort of figure of speech, in which the title is personified and made subject to many of the rules applicable to personal slander," the five prerequisites to the right of action mentioned and contended for by defendant are recognized. The general rule is stated in 25 Cyc. 559, and at p. 560, it is said:

"Malice is a necessary ingredient to entitle plaintiff to recover. Indeed it is said that malice is the gist of the action."

But it is not necessary to show ill will, hatred, etc., toward the owner of the land in order to establish a prima facie case of malice. The word "malice" seems to have a varied definition or description depending largely upon the connection in which it is used and the nature of the litigation in which it is sought to be established, the subject to which it is applied, etc. A number of particular kinds of malice seem to be recognized in law, such as "actual malice," "express malice," "implied malice," "malice in fact," "malice in law," and others.

The general rule is that if plaintiff can show the publication was false in any material respect, and can also show special damages to himself, malice will be presumed and a prima facie case of malice will be made. Malice will be implied or inferred from the facts and circumstances of the case as they are ascertained to exist. Dalzell v. Dean Hotel Co., 193 Mo. App. 379, 186 S. W. 41.

The evidence discloses that at the time the affidavit was executed and filed all the conditions of the lease of defendant therein referred to had not been duly complied with and all rentals accruing thereunder had not been duly paid or deposited as required by the terms and provisions of the lease. The affidavit in this respect was not true, in that on the 11th day of April, 1923, there became due and payable under the terms and conditions of said lease the sum of $197 as a condition for the extension of the term of said lease for one year from that date. That is, the lease by its terms expired on that date as to the land involved, unless said sum was paid to the owner or owners of said land or deposited to their credit in the bank therein designated. This was not done. Defendant had, with notice that the original owner of the land here involved had sold and transferred an undivided one-half interest, sent the entire sum necessary to renew or continue its lease for another year to the purchaser of the undivided one-half interest. So that Johnson, the owner of the remaining one-half interest, had not in fact been paid, although he had been paid in full as to other lands owned by him and included in defendant's lease. Defendant in its answer in effect admitted this to be true, though they alleged that the entire rental had been paid to Johnson, the original owner, instead of to one Badger, the transferee of the undivided one-half interest. It also admits in its answer that before it ascertained

its mistake plaintiffs acquired their lease and notified defendant of that fact. It cannot, therefore, be said that the affidavit spoke the entire truth. It will thus be seen that the publishing and falsity in part of the affidavit was proved. From this proof the jury would be warranted in inferring malice. There was also evidence reasonably tending to sustain the fourth prerequisite. However, it is contended that under the rule announced in Brunson v. Carter Oil Co., 263 Fed. 935, Harvey v. Benmo Oil Co., 272 Fed. 475, and Brazell v. Soucek, 130 Okla. 204, 266 P. 442, defendant did not lose its option to renew the lease or extend the term thereof by reason of the fact that it had made a mistake in its office and sent all the rental to Badger, who was entitled to but one-half thereof, instead of sending one-half to him and one-half to Johnson.

Harvey v. Benmo Oil Co., supra, and Brazell v. Soucek, supra, are clearly distinguishable from the instant case, as therein the mistakes, errors, etc., by reason of which the rentals when due did not reach the parties entitled thereto, were not the mistakes or negligence of the lessee and the controversies there involved were between the lessors and the lessee, no intervening rights of third parties being involved. The principle applied in the Brunson Case, supra, to the effect that where down payment for what is termed an "unless lease" is substantial and is a consideration for the execution of the lease, and also for the option to renew or extend the term from time to time by drilling or commencing a well, as the case may be, or with a stipulated sum called rental for the privilege of deferring for a definite time the drilling or commencement of a well, the failure to drill or pay works a forfeiture of a valuable right conferred under a valid mutual contract based on a valuable consideration, has never been applied by this court. On the other hand, this court has many times, before and since the Brunson Case, held that in such cases, upon failure to drill or pay within the time provided by the option clause, the lease automatically terminates and that the equitable rules against forfeiture do not apply. Curtis v. Harris, 76 Okla. 226, 184 P. 574; Cohn v. Clark, 48 Okla. 500, 150 P. 467; McKee v. Grimm, 57 Okla. 680, 157 P. 308; Eastern Oil Co. v. Beatty, 71 Okla. 275, 177 P. 104; Mitchell v. Probst, 52 Okla. 10, 152 P. 597; Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 P. 514; Eastern Oil Co. v. Smith, 80 Okla. 207, 195 P. 773; McKinlay v. Feagins, 82 Okla. 193, 198 P. 997; Crowder v. James, 110 Okla. 214, 236 P. 891.

In McKinlay v. Feagins, supra, it was held:

"An oil and gas lease containing the 'unless' clause confers an optional right upon the lessee, and should be strictly construed in favor of the lessor and against the lessee and time is of the essence of the contract."

In the body of the opinion, Mr. Justice Kennamer, citing Kolachny v. Galbreath, 26 Okla. 772, 110 P. 902, said:

"It is an important rule of law, founded upon equity and justice, that in construing oil and gas leases containing the provision found in the contract under consideration, that the courts adhere to the rule that time is of the essence of the contract. Such properties have a fluctuating value and may be very valuable one day and practically valueless the next day, and the 'unless' clause in this character of leases operates entirely for the benefit of the lessee and will be strictly construed in favor of the party that is bound and against the party that is not bound."

What the lessee, under an oil and gas lease containing the "unless" clause, holds is a right or privilege of preventing the termination of the lease at the time stipulated in the clause by commencing or completing a well, as the case may be, within the time, or paying the stipulated sum at the time and in the manner provided in the lease. The lessee is the one who must move to prevent the termination of the lease. The lessor is required to do nothing. Unless the lessee takes the necessary steps the lease terminates. The lessor may, when the lessee has not taken the necessary steps to prevent the termination of the lease, lease the land to another. When a third party acquires a lease under such conditions, and especially so where he acquires it without any notice of any claim of mistake or unavoidable casualty upon the part of the former lessee, as in the instant case, his rights will be protected.

The second proposition presented is that a corporation is not liable for slander of title committed by its agent unless such agent was expressly authorized or directed to speak the slanderous words, or unless such act of the agent is subsequently ratified by the corporation. Many cases are cited upholding the contention made in this regard, and it is insisted that Moran, though president and general manager of the defendant company, committed the act complained of on his own responsibility and without any corporate authorization, and the company is, therefore, not responsible.

In German-American Ins. Co. v. Huntley, 62 Okla. 39, 161 P. 815, this court held:

"A corporation is liable in an action for

libel published by its officers, servants, or agents whenever such publication is made in the performance, or within the scope of the general duties of such officers, servants, or agents."

The evidence in the record shows clearly that Moran was the president and general manager of defendant company and attended to all of its business in Oklahoma. The affidavit shows upon its face that it was made and filed for the benefit of defendant and for the purpose of protecting its supposed interest in the land. It appears reasonably certain that the publication complained of was made by Moran in and connected with the performance of his duties as such officer and agent. But conceding that this is not so, it fairly appears that when the matter was called to the attention of the defendant company, it did nothing to remove the notice from the record, but stood upon and staunchly defended the action of Moran. If his acts were not authorized in the first instance, we think they were ratified by the defendant.

Defendant also contends that plaintiffs' cause of action, if any he had, was barred by the statute of limitations.

The affidavit or notice complained of was filed for record April 27, 1923. The petition was filed February 20, 1925, and service of summons on defendant company was made February 24, 1925. The action was commenced more than one year and less than two years after the date of the filing of the affidavit or notice. Defendant contends that subdivision 4 of section 185, C. O. S. 1921, which provides that an action for libel, slander, etc., must be brought within one year, applies. Plaintiffs contend that the two year provision of the third subdivision of section 185, supra, applies and particularly the clause thereof which reads:

"An action for injury to the rights of another, not arising on contract and not hereinafter enumerated."

Plaintiffs also contend that if subdivision 4 applies, as contended for by defendant, then by filing an answer and cross-petition against this defendant in an action theretofore brought by Johnson to quiet title to the land, and wherein this plaintiff was made a defendant, setting up the same cause of action, which answer and cross-petition were stricken and dismissed by the court on December 17, 1924, without prejudice to the bringing of another action, they are protected by section 190, C. O. S. 1921, which provides:

"If any action be commenced within due

time, and a judgment thereon for the plaintiff be reversed, or if the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff, or, if he die, and the cause of action survive, his representatives, may commence a new action within one year after the reversal or failure."

Neither party cites any authority directly in point as to which provision of the statute controls. We deem it unnecessary to discuss this question. The record shows clearly that the affidavit or notice complained of remained of record, and that defendant continued to assert its rights and claims to the land until about December 17, 1924, when it agreed to a judgment canceling its lease. The rule as to the running of the statute of limitation in cases involving slander of title is stated in 37 C. J. 133, as follows:

"Where the slander complained of consists of a continued claim of rights in plaintiff's property by defendant, the statute of limitations does not commence to run until defendant ceases to set up his adverse claims."

Chesebro v. Powers (Mich.) 44 N. W. 290, is the authority cited for the rule stated above. The court did not there directly hold that the statute of limitation applied to libel and slander as to persons, which in that state is two years, applied, but held:

"Though the deed containing the defamatory words was executed more than two years before commencement of the action, as defendants continued their claim to the premises up to within a few months thereof, plaintiff's action is not barred, even if How. St. Mich. sec. 8714, which provides that 'all actions for * * * slanderous words and for libels shall be commenced within two years after the cause of action shall accrue,' is applicable."

We think the rule is sound and reasonable and that there is no merit in defendant's contention in this regard.

Defendant presents another question which we think requires a reversal for new trial. The trial court, among others, gave the following instruction:

"You are instructed that the issue of fact for you to decide is the amount of damages that plaintiffs have proved that they are entitled to recover by the wrongful act of the defendant in filing said affidavit and publishing it of record as alleged in plaintiffs' petition."

While this instruction was not excepted to and exceptions noted as required by section 542, C. O. S. 1921, defendant has attempted to have the record corrected so as to show

that at the trial defendant excepted to this instruction and the court allowed the exception, but under a custom prevailing in that court attorneys were permitted to save their exceptions to instructions and after the verdict indorse their exceptions thereon and have the same signed by the trial judge, and that in this case defendant by oversight had failed to have the exception noted and the trial court had failed to sign same.

We are not to be understood as holding that this was a proper correction of the record and that a trial court may by custom abolish or dispense with a plain statutory requirement, but we think the error sought to be reviewed in giving this instruction may properly be considered under objections properly made and exceptions properly saved in the refusal to give another instruction offered by defendant.

Defendant offered the following instruction:

"You are further instructed that before you can return a verdict in this case in favor of the plaintiff, you must find that the defendant, New England Oil & Pipe Line Company, in filing the affidavit or notice of which the plaintiff complains, acted maliciously and without probable cause, and in this connection you are instructed that if you find from the evidence that said defendant filed said affidavit or notice, pursuant to a bona fide claim, which it was then honestly asserting, or if you find that said defendant in filing said affidavit was acting under the advice of counsel, then and in either event said defendant is not liable and your verdict should be for the defendant.

"Offered by the defendant and refused by the court."

With reference to the question of defense as to the claim of malice, the general rule seems to be that:

"To rebut evidence of malice defendant may show that he was advised by counsel, upon a fair representation of his claim, as to the course to be pursued in the protection of its rights. It must appear, however, that the defendant truthfully disclosed to his counsel all the material facts within his knowledge."

And:

"The question of whether the publication was actuated by malice is ordinarily one for the jury. If there is any evidence of malice, the question of malice should be submitted to the jury."

In Ward v. Mid-West & Gulf Co., supra, this court held:

"Malice or want of good faith and want of probable cause are essential elements of the action of slander of title, and damages cannot be recovered where it appears that such element is absent. Where defendant acts in pursuance of a bona fide claim which he is asserting honestly, although without right, as eventually appears from an adjudication by a court of competent jurisdiction, such defendant will not be penalized in damages for asserting such bona fide claim in good faith. * * *"

There is evidence in the record tending to show that before Moran executed the affidavit and notice complained of and caused the same to be filed of record he consulted reputable counsel, who advised him to do what he did. That counsel advised him that defendant had not by sending a part of the rental to the wrong party permitted its lease to expire as to the one-half interest in the land retained by Johnson and subsequently leased to plaintiff. There is also evidence in the record to the effect that before making and filing the affidavit and notice, defendant, through its agent, had some negotiations with plaintiff looking toward the purchase of the lease thus acquired by plaintiff, and other circumstances from which it might reasonably be inferred by a jury that what the defendant was actually trying to do was to embarrass or harass plaintiff, and thereby obtain the lease from him for less than its actual value at that time, which if true would show the utmost lack of good faith. It cannot, therefore, be said as a matter of law that there was no good faith in the act of Moran or that he was acting in bad faith. The evidence was in conflict as to this point thus raising a question for the jury.

While the instruction in the form offered by defendant was properly refused, yet we think it was sufficient to direct the attention of the court to the question of good faith or lack of good faith so as to call for a proper instruction on that question.

For failure to submit this question the cause is reversed and remanded, with directions to grant defendant a new trial.

LESTER, C. J., and CULLISON, SWINDALL, and KORNEGAY, JJ., concur. ANDREWS, J., not participating. HEFNER and McNEILL, JJ., absent.

CLARK, V. C. J. I dissent for the reason there was no question of good faith to be presented to the jury. The filing of the affidavit could serve no purpose except to cloud plaintiffs' title.