**PHILLIPS PETROLEUM CO. v. CURTIS et al.**

**Civ. No. 2470.**

United States District Court
E. D. Oklahoma.

July 18, 1949.

R. L. Foster, Bartlesville, Okl., R. B. F. Hummer, Bartlesville, Okl., W. J. Zeman, Bartlesville, Okl., Harry D. Turner, Oklahoma City, Okl., for plaintiff.

Solon W. Smith, Oklahoma City, Okl., Curtis & Blanton, Pauls Valley, Okl., for defendant.

RICE, Chief Judge.

The essential facts in this case are not in dispute.

Plaintiff acquired by assignment an oil and gas lease which had been executed October 4, 1946, by the defendants, Joe W. Curtis and his wife, Lois B. Curtis, covering an undivided 1/3 interest in the Southwest Quarter of the Southwest Quarter of Section 12, Township 3 North, Range 3 West, Garvin County, Oklahoma. The lease in question is what is commonly referred to by oil men as an "unless" lease. It contains the following language: "If no well be commenced on said land on or before the 4th day of October, 1947, the lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor * * * the sum of Forty and No/100 ($40.00) Dollars * * *". Under another provision of the lease the lessors are entitled to only 1/3 of $40.00 as delay rentals since they owned only a 1/3 interest in the 40 acres.

Prior to October 4, defendants had sold an undivided 1/24 interest in the 40 acres and on said date owned only an undivided 11.666 acres (or an undivided 11.666/40) mineral interest under the lands described in said lease.

Delay rentals were paid on October 4, 1947. No well was commenced on said 40 acres before October 4, 1948, and no rentals were paid or tendered to defendants on or before said date. Rentals in proper amount were tendered in December, 1948, but defendants refused to accept and still refuse to accept the tender.

Defendants contend that the lease terminated as to their interest on failure to pay the rentals on October 4, 1948. Plaintiff contends that under the circumstances surrounding the failure to pay equity will not declare the lease forfeited. Plaintiff in this suit tenders the rentals due with interest and seeks a decree validating said oil and gas lease. By cross-claim the defendants ask the court to declare the lease of no force and effect and that same be cancelled as a cloud upon their title.

Briefly the facts relied upon by the plaintiff are as follows:

The 40 acres involved is a part of 120 acres described as follows: Southeast Quarter (SE) of Northeast Quarter (NE); Southwest Quarter (SW) of Southwest Quarter (SW); South Half (S½) of the Northwest Quarter (NW) of Southwest Quarter (SW); Southwest Quarter (SW) of Northeast Quarter (NE) of Southwest Quarter (SW); Northeast Quarter (NE) of Northeast Quarter (NE) of Southwest Quarter (SW), all situated in Section 12, Township 3 North, Range 3 West, Garvin County, Oklahoma.

Mabel M. Arnett at all times material owned an undivided 2/3 interest in the minerals under the entire 120 acres. Defendants owned the other 1/3 interest. On the 2d day of January, 1946, Mabel M. Arnett, gave plaintiff an oil and gas lease on her 2/3 interest in the 120 acres. On the 4th day of October, 1946, defendants gave a lease on their undivided 1/3 interest in the 40 acres involved to James T. Blanton, Jr., who on January 2, 1948, assigned same to plaintiff. On January 2, 1948, defendants gave plaintiff an oil and gas lease on their undivided 1/3 interest in the remaining 80 acres of the 120 acres. Plaintiff paid $200 per acre for the Curtis leases and $50 per acre for the Arnett lease.

Plaintiff, a large producer of oil and gas and a holder of many leases not only in Oklahoma but throughout the United States and other oil producing countries, had assembled a rather extensive block of leases in the vicinity of the lease in question. Its investment in leases in the area was substantial. It had expended large

sums in drilling and developing the area. Prior to October 4, 1948, it had drilled and completed a producing well on that portion of the land included in the 80 acre lease executed by the defendants in favor of the plaintiff. The well was located on the Southeast Quarter (SE) of the Northeast Quarter (NE) of Section 12.

Unquestionably, plaintiff intended to pay the rentals due on October 4, 1948. Necessary steps were taken looking toward further drilling and development in the immediate vicinity. Its producing well had greatly increased the value of its leases including the one in question. The reason for failure to pay the rentals on time was an error by an employee in charge of the lease records. When the producing well was completed, plaintiff's employee erroneously marked the entire 120 acres "held by production" which signified no delay rentals were required. In detail plaintiff showed the manner and method of keeping its records. It is not deemed necessary here to relate the details. The fact deemed important being that the error was committed by plaintiff's employee. The defendants were in no way to blame. No third party or agency such as the United States Mails or the depository bank intervened to cause the delay. Plaintiff's employee knew that a producing well would not excuse payment of delay rentals except as to the lease upon which the well is located. His error therefore, is one of fact. At the time he marked this lease "held by production", reasonable diligence would have disclosed that he was in error. The more voluminous the records, the more intricate the system, the greater is the required degree of care. Plaintiff says the error was unintentional and inadvertent not due to negligence. It does not follow that an unintentional or inadvertent act is not a negligent act. "Inadvertent" is defined by Webster[1] as "heedless, inattentive, negligent."

The problem presented by a failure to make timely payment of delay rentals under an "unless" oil and gas lease has been before the Supreme Court of Oklahoma many times. The law of Oklahoma is controlling in this case. The general rule in Oklahoma is that an "unless" oil and gas lease terminates upon failure to timely pay delay rental and a forfeiture is not then involved. The reason for this general rule was well stated in the early case of Frank Oil Co. v. Belleview Gas & Oil Co. et al., 29 Okl. 719, 119 P. 260, 43 L.R.A.,N.S., 487, some of the pertinent reasons being (a) the lessee is not bound to pay; (b) by the terms of the lease the lessee has an option to continue the lease; (c) optional contracts are strictly construed in favor of the party that is bound and against the party that is not bound. In a later case, Mitchell et al. v. Probst, 52 Okl. 10, 152 P. 597, it was held that time is of the essence of such a contract.

Carefully prepared and exhaustive briefs have been filed by both plaintiff and defendants. All Oklahoma cases on the subject have been cited. The general rule has been adhered to with the exception of three cases in which the Oklahoma Court had occasion to deviate therefrom. The first case was Oldfield v. Gypsy Oil & Gas Co., 123 Okl. 293, 253 P. 298, wherein the delay in payment of rentals was occasioned by the letter containing the draft for payment of same being delivered to the wrong bank through no fault of the lessee. Postal authorities were at fault. This was held to be an unavoidable casualty or misfortune to which the lessee did not contribute. In a second case, Brazell v. Soucek, 130 Okl. 204, 266 P. 442, the draft covering payment of the delay rentals was left with the depository bank before the due date. Funds were in the bank with which to pay the draft. The deposit to the credit of lessors was not made on the due date and although the bank still held lessee's draft, lessors instructed the bank on the morning after the due date not to make the deposit. The failure to make the deposit was due to some misunderstanding on the part of the bank cashier. In a third case, McCrory v. Twombly, 130 Okl. 245, 266 P. 768, the rentals were paid after due, but the court found that the lessor with

[1] Websters New International Dictionary of the English Language, Second Edition, Unabridged, 1941.

402

knowledge retained the rentals, failed to return them or tender them back for more than five months and held this amounted to an acceptance and ratification of the payment.

Plaintiff leans rather heavily, in my opinion, upon Brunson v. Carter Oil Co., D.C., 259 F. 656 and Id., D.C., 263 F. 935. In many respects the facts in the Brunson case are similar to the facts in this case. If the Brunson decision were the controlling law, I would feel impelled to decide for the plaintiff, but it is not controlling, and in my opinion the Oklahoma Supreme Court has not only failed to follow the Brunson case, See Garfield Oil Co. v. Champlin et al., 78 Okl. 91, 189 P. 514, but the Oklahoma Court has refused to follow it. See New England Oil & Pipe Line Co. v. Rogers, 154 Okl. 285, 7 P.2d 638.

The "unless" form of an oil and gas lease has been used in Oklahoma for many years. It has an accepted meaning— a meaning that is known not only to the legal profession but to those laymen familiar with the oil industry. The general rule announced in the Frank Oil Company case and reiterated in many other decisions [2] is the basis of that accepted meaning. The general rule conforms to the clear meaning of the language employed by the contracting parties. It is my view that a court of equity should not extend the departure or exception from the general rule to embrace a situation where the failure to pay the delay rental is due to an error occurring within the organization of the lessee and not contributed to in any way by some third person or agency. To do so would seriously impair

the rule itself. It would leave the law in a state of uncertainty that would be detrimental rather than beneficial in its future application. The Oklahoma decisions, in my judgment, support this conclusion.

Decree in conformity herewith should be prepared by the attorney for the defendants and presented to the Court for signing and entry at Chickasha, Oklahoma, on the 26th day of July, 1949, at 9:30 a. m.

---

[2] Frank Oil Co. v. Belleview Gas & Oil Co. et al., 1911, 29 Okl. 719, 119 P. 260, 43 L.R.A.,N.S., 487; Deming Inv. Co. v. Lanham, 1913, 36 Okl. 773, 130 P. 260, 44 L.R.A.,N.S., 50; Cohn v. Clark, 1915, 48 Okl. 500, 150 P. 467, L.R.A.1916B, 686; Mitchell v. Probst, 1915, 52 Okl. 10, 152 P. 597; McKee v. Grimm, 1916, 57 Okl. 680, 157 P. 308; Warner v. Page, 1916, 59 Okl. 259, 159 P. 264; Curtis v. Harris et al., 1919, 76 Okl. 226, 184 P. 574; Garfield Oil Co. v. Champlin et al., 1920, 78 Okl. 91, 189 P. 514; Eastern Oil Co. v. Smith, 1920, 80 Okl. 207, 195 P. 773; McKinlay v. Feagins, et al., 1921, 82 Okl. 193, 198 P. 997; Ireland v. Chatman, 1922, 87 Okl. 223, 209 P. 408; Crowder et al. v. James, 1925, 110 Okl. 214, 236 P. 891; Oldfield v. Gypsy Oil & Gas Co., 1926, 123 Okl. 293, 253 P. 298; Brazell v. Soucek et al., 1928, 130 Okl. 204, 266 P. 442; McCrory v. Twombly, 1928, 130 Okl. 245, 266 P. 768; Harris v. Kerns et al., 1930, 144 Okl. 225, 291 P. 100; New England Oil & Pipe Line Co. v. Rogers, 1931, 154 Okl. 285, 7 P.2d 638; Williams v. Ware, 1934, 167 Okl. 626, 31 P.2d 567; Lewis v. Grininger, 1947, 198 Okl. 419, 179 P. 2d 463.